UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EMPLOYERS INSURANCE
COMPANY OF WAUSAU,

      Plaintiff,

                                                        Case Number 11-10206-BC

v.                                               Honorable Thomas L. Ludington

DURO-LAST ROOFING, INC., and
OSCODA PLASTICS, INC.,

      Defendants.

_____ /

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND CANCELING HEARING

Defendants Duro-Last Roofing, Inc. and Oscoda Plastics, Inc. manufactured a flooring product that was installed in hundreds of restaurants in twenty-three states. According to one of the purchasers, the flooring was defective and Defendants were sued in state court in North Carolina. Plaintiff Employers Insurance Company of Wausau, one of Defendants' insurers, then filed this case under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that the North Carolina case and any assorted liability was not covered by its policies. On March 7, 2011, Defendants filed a motion to dismiss, contending that the Court should decline to exercise jurisdiction over this case until the underlying product liability case is resolved. For the reasons explained below, the motion to dismiss will be denied.

**I.**

On January 18, 2011, Plaintiff filed a complaint against Defendants seeking a declaration with respect to its obligations under several general commercial liability insurance policies issued in the late 1990s and early 2000s. During that time period, Defendants were manufacturing and

selling a commercial flooring product, "Protect-All," that was installed in 157 Cracker Barrel restaurants around the country. On June 13, 2007, Cracker Barrel sued Defendants and several installation contractors in Wake County, North Carolina, alleging that the Protect-All flooring was defective and seeking damages. Cracker Barrel claims the design, manufacture, and installation of the Protect-All flooring was defective. One of the installation contractors, Allied Companies, LLC, also filed a counter-claim against Defendants, seeking indemnity for any defects in the flooring product.[1]

The underlying Cracker Barrel case is scheduled to go to trial in North Carolina in September 2011. Fifty-four witnesses, including eight experts, have been deposed. The parties have also produced 145,000 pages of documents. The co-defendants in the Cracker Barrel litigation have agreed that they will not pursue their counter-claims against one another until the underlying issues of liability are resolved. Defendants provided Plaintiff notice of the Cracker Barrel litigation on March 19, 2008. Plaintiff agreed to participate in the litigation and provided a defense, but under a full reservation of rights.

In this case, Plaintiff seeks a declaration outlining precisely what those rights are under the policies. According to Plaintiff, coverage with respect to the Cracker Barrel litigation is limited because:

> a. The Wausau Policies provide coverage for those sums that the insured "becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." To the extent that the Cracker Barrel Lawsuit does not involve sums that the insured is legally

---

[1] Two related cases were filed in this Court, seeking to apportion liability among the various defendants in the initial Cracker Barrel suit and litigating patent rights related to flooring products. *See Oscoda Plastics, Inc. v. Allied Companies, LLC*, No. 09-11532-BC; *Oscoda Plastics, Inc. v. Allied Industries International, Inc.*, 09-14334.

        obligated to pay as damages because of bodily injury or property damage to which this insurance applies, there is no insurance coverage under the Wausau Policies.

b.      The Wausau Policies provide coverage for "property damage" caused by an "occurrence." To the extent that the Cracker Barrel Lawsuit does not constitute an "occurrence," as defined by the Wausau Policies, there is no insurance coverage for the Cracker Barrel Lawsuit under the Wausau Policies.

c.      The Wausau Policies provide coverage for damages because of "property damage" as defined by the policies. To the extent that the Cracker Barrel Lawsuit does not involve damages because of "property damage," there is no insurance coverage for the Cracker Barrel Lawsuit, in whole or in part, under the Wausau Policies.

d.      The Wausau Policies provide coverage for "property damage" that occurs during the policy period. To the extent that the Cracker Barrel Lawsuit involves "property damage" that did not occur during the effective dates of the Wausau Policies, there is no coverage under the Wausau Policies.

e.      The Wausau Policies contain the known injury or damage limitation that precludes coverage for "bodily injury" or "property damage" where an insured knew that the "bodily injury" or "property damage" had occurred in whole or in part prior to the policy periods. Coverage under this limitation is also precluded for any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy periods. To the extent that this limitation applies to the Cracker Barrel Lawsuit, there is no insurance coverage under the Wausau Policies.

f.      The Wausau Policies do not provide insurance coverage for "property damage" expected or intended from the standpoint of the insured. To the extent that "property damage" was expected or intended from the standpoint of the insured, there is no coverage for the Cracker Barrel Lawsuit under the Wausau Policies.

g.      The Wausau Policies do not provide insurance coverage for "property damage" to "your product." To the extent that the Cracker Barrel Lawsuit is for "property damage" to the insured's product, there is no insurance coverage under the Wausau Policies.

h.      The Wausau Policies do not provide insurance coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'". To the extent that the Cracker

Barrel Lawsuit is for "property damage" to the insured's work, there is no insurance coverage under the Wausau Policies.

i. The Wausau Policies do not provide insurance coverage for "'property damage' to 'impaired property' or property that has not been physically injured, arising out of a defect, deficiency, inadequacy, or dangerous condition in 'your product' or 'your work.'" To the extent that the Cracker Barrel Lawsuit seeks relief for damages to "impaired property," as that term is defined by the Wausau Policies, or to property that has not been physically injured, there is no coverage for such damages that arose out of a defect, deficiency or dangerous condition in "your product" or "your work" under the Wausau Policies.

j. The Wausau Policies do not provide insurance coverage for "property damage" to that particular part of real property on which the insured or any contractors or subcontractors working directly or indirectly on the insured's behalf are performing operations, if the "property damage" arises out of those operations; or that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. To the extent that the Cracker Barrel Lawsuit is for such described "property damage," there is no insurance coverage under the under the Wausau Policies.

k. The Wausau Policies do not provide insurance coverage for damages incurred by the insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product," "your work" or "impaired property," if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it. To the extent that the Cracker Barrel Lawsuit seeks such damages, there is no insurance coverage under the Wausau Policies.

l. The Wausau Policies do not provide insurance coverage for "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. To the extent that the Cracker Barrel Lawsuit seeks amounts for "property damage" which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement, there is no insurance coverage under the Wausau Policies.

m. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that such lawsuit results from a loss that was known, in progress or otherwise was not fortuitous at the time of issuance of

the Wausau Policies.

n. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that the claims in that lawsuit seek fines, penalties, exemplary and/or punitive damages.

o. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that any insured has failed to comply with the Wausau Policies' conditions, as compliance with such conditions is a prerequisite to coverage.

p. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that any insured has failed to provide Wausau with timely notice of an "occurrence," claim or "suit" against an insured.

q. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that any insured incurred costs and expenses or assumed other obligations without notice to and the consent of Wausau.

r. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that any insured has failed to cooperate or assist Wausau with respect to the Cracker Barrel Lawsuit.

s. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that the lawsuit involves unreasonable, inappropriate or unnecessary costs incurred by the insured to settle or defend, or for internal costs, expenses or fees relating to the Cracker Barrel Lawsuit, or for pre-tender and/or pre-notice fees and costs or settlements.

t. The Wausau Policies' coverage obligation, if any, for the Cracker Barrel Lawsuit is subject to the applicable occurrence or aggregate Limits of Insurance as stated in the Wausau Policies.

u. The Wausau Policies' coverage obligations, if any, for the Cracker Barrel Lawsuit may arise out of a single "occurrence" as that term is defined in the Wausau Policies, and in that event is subject to a single per occurrence limit of liability.

v. The Wausau Policies' coverage obligations, if any, for the Cracker Barrel Lawsuit is subject to the Other Insurance conditions in those policies.

w. The Wausau Policies' coverage obligation, if any, is subject to the provision regarding Two or More Coverage Parts or Policies Issued by Us in those policies. That provision states that "if any claim or 'suit' arising out of an

>  'occurrence' or offense covered under this Coverage Part is also subject to coverage under any other Coverage Part or policy issued by us or by any company affiliated with us, the total maximum limit of liability under all Coverage Parts or policies shall not exceed the highest applicable limit of liability under any one Coverage Part or policy."
> 
> x. The Wausau Policies' right and duty to defend the Cracker Barrel Lawsuit, if any, ends when the applicable limits of insurance have been exhausted in the payment of judgments or settlements.
> 
> y. The Wausau Policies do not provide insurance coverage for some or all of the claims in the Cracker Barrel Lawsuit to the extent that any insured negligently or intentionally failed to represent or disclose to Wausau or concealed or misrepresented to Wausau facts which were material and known by the insured in order to induce Wausau to issue the Wausau Policies or to assume certain risks in such Policies.
> 
> z. The Wausau Policies do not provide insurance coverage for the Cracker Barrel Lawsuit to the extent that any other policy terms, definitions, exclusions, conditions and endorsements not specifically identified herein apply to the Cracker Barrel Lawsuit, in whole or in part.

Pl.'s Compl. ¶ 21.

On March 7, 2011, Defendants filed a motion to dismiss Plaintiff's complaint, contending that the Court should decline to exercise its discretionary authority under the Declaratory Judgment Act until the underlying factual disputes about the nature and the extent of the defects in the flooring are resolved in North Carolina. *See* 28 U.S.C. § 2201; *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). Defendants contend it would be inefficient and an abuse of this Court's discretion under the Declaratory Judgment Act to entertain Plaintiff's claims where many of the same factual issues are already before the North Carolina court. Plaintiff, by contrast, argues that the extent to which Defendants are entitled to insurance coverage for the underlying Cracker Barrel litigation depends on the language of the policy, not the facts of the underlying case, and this Court should not wait for that case to be resolved before considering coverage issues.

## II.

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The statute "created an opportunity, rather than a duty" for district courts to exercise jurisdiction over a type of dispute that would otherwise be beyond their reach. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking declaratory judgment" where "considerations of practicality and wise judicial administration" would not be served by immediate resolution of the controversy. *Id.* The "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the district courts'] grasp." *Id.* at 289 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995) (noting that the standard of review in appellate court depends on "the respective institutional advantages of trial and appellate courts") (quotations omitted)).

The Sixth Circuit has identified several factors that are relevant to the question of whether a district court should exercise jurisdiction in a declaratory judgment action:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";

    (4)    whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

    (5)    whether there is an alternative remedy which is better or more effective.

*Flowers*, 513 F.3d at 554 (citing *Grand Trunk W. R.R. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)). "When all is said and done, . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.' " *Wilton*, 515 U.S. at 287 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).

**A.**

The first question is whether the declaratory judgment action would settle the controversy. *Flowers*, 513 F.3d at 554 (citation omitted). The answer, of course, depends on what "controversy" means. Is it the wider factual and legal "controversy" concerning the allegedly defective flooring product, including the cause of the defect and the apportionment of blame? Or is it the narrow "controversy" between the insurance company and the insured concerning the extent of the insurer's duty to defend and indemnify with respect to the flooring lawsuits? The Sixth Circuit authority defining "controversy" has been divided.

As the Sixth Circuit noted in *Flowers*, in one line of cases, the focus has been on whether the declaratory judgment action would settle the dispute about insurance coverage and the insurer's duty to defend, without regard to the underlying case. 513 F.3d at 555; *W. Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396–97 (6th Cir. 2006); *Northland Ins. Co. v. Stewart Title & Guar. Co.*, 327 F.3d 448, 453–54 (6th Cir. 2008); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1065–66 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986). In a second line

of cases, the focus has been on the controversy as a whole—not just the dispute between the insurer and the insured, but the underlying case as well. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271–72 (6th Cir. 2007); *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564–65 (6th Cir. 2006); *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 813–14 (6th Cir. 2004); *Grand Trunk*, 746 F.2d at 326.

On initial review, the various decisions seem inconsistent. Upon closer examination, however, an important distinction between the two lines of cases is apparent. In the first line of cases, focusing just on the insurance controversy, a technical or legal issue is often at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed. In the second line of cases, focusing on the controversy as a whole, resolution of disputed facts in the underlying case will also resolve the disagreement about coverage. In *Bituminous Casualty Corp.*, from the second line, a question about whether the injured person was an employee of J&L Lumber Company resolved the underlying worker's compensation claim because the injured person was only entitled to worker's compensation if he was an employee; it resolved the underlying common law negligence claim because such claims were preempted by the worker's compensation statute for employees injured on the job; and it resolved the insurance claim because J&L had a general liability policy that covered negligence claims but no policy that covered worker's compensation claims. 373 F.3d at 809, 811–14. In *Flowers*, from the first line, the issue in the underlying state case was the extent to which Flowers, a mental health therapist, and the healthcare center where he worked were liable to one of Flowers' patients for negligent breach of professional standards based on Flowers' sexual relationship with the patient, but the insurance

dispute turned on whether the Flowers' conduct was within the scope of Flowers' employment.[2] 513 F.3d 550.

Thus, in *Bituminous Casualty Corp.*, resolution of one of the key issues in the underlying state case—whether the injured person was a J&L employee—also resolved the insurance dispute, but in *Flowers*, resolving the state case left the insurance dispute unresolved. Accordingly, the first factor depends not on whether a discrete "controversy" would be resolved, but on the relationship between the insurance coverage dispute and the underlying case. The first question could, perhaps, be better stated: Would the declaratory judgment action resolve the insurance dispute without unnecessarily duplicating the proceedings or considering an issue that has been, or will be, considered by the state court? In *Bitumimous Casualty Corp.* the answer would still be no, but in *Flowers*, the answer would be yes.

Here, resolution of the underlying Cracker Barrel litigation will not resolve the insurance coverage dispute before this Court. Moreover, this Court has jurisdiction to enter a declaratory judgment resolving several of the coverage issues identified in Plaintiff's complaint, including the effective dates of the policies, the timing of the claims, and whether the alleged defects in the flooring are "property damage" within the meaning of the policies. To the extent there are underlying factual issues that must be resolved by the North Carolina court before the coverage issues can be finalized, the Court may stay the case at that juncture. The first factor suggests that the Court should exercise jurisdiction over the case.

---

[2] Notably, the issue of whether Flowers was acting within the scope of his employment may have been relevant to the question of vicarious liability of his employer in the underlying case. That, however, was not a central issue in the underlying case. The employer could also be directly negligent in hiring, training, and supervising of Flowers. *See Flowers*, 513 F.3d at 555 n.2.

**B.**

The second factor—whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue—largely mirrors the first factor. *See Flowers*, 523 F.3d at 557. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Bituminous Cas.*, 373 F.3d at 814; *Northland Ins.*, 327 F.3d at 454). Here, a declaratory judgment would clarify the relationship between Plaintiff and Defendants by setting parameters with respect to the Plaintiff's duty to defend in the Cracker Barrel litigation and Plaintiff's duty to indemnify Defendants. Moreover, it will clarify the relationship in a way that the underlying state court case cannot, at least at this stage. Plaintiff is not a party to that case. If this Court declines to exercise jurisdiction, Plaintiff would be obligated to continue to fund a defense without an opportunity to litigate its duty to defend. Accordingly, the second factor also favors accepting jurisdiction.

**C.**

The third factor asks the Court to consider whether the declaratory action was filed merely for the purpose of "procedural fencing" or "to provide an arena for res judicata." *Flowers*, 513 F.3d at 558. "The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.' " *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). District courts should be "reluctant to impute an improper motive" where the declaratory plaintiff filed suit after the underlying state litigation began. *Flowers*, 513 F.3d at 558 (citations omitted). Plaintiffs are entitled to "choose the jurisdiction of federal rather than state court, a choice given by Congress," and that choice alone is "no evidence" of

-11-

procedural fencing. *Odom*, 799 F.2d at 250 n.1.

There is no evidence that Plaintiff filed a declaratory judgment action in this Court to head off the state court's resolution of the underlying factual issues or to engage in some unidentified procedural maneuver. Rather, Plaintiff is seeking a declaration of its duties with respect to Defendants in the Cracker Barrel litigation, including whether the alleged flooring defects constitute "property damage" within the meaning of the policies. *See Flowers*, 513 F.3d at 559 ("A declaratory judgement proceeding which involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the accident, will be entertained in the Federal Court, and the insurer is entitled to have the extent of the coverage of its policy declared in such a proceeding . . . .") (quoting *Am. States Ins. Co. v. D'Atri*, 375 F.2d 761, 763 (6th Cir. 1967)). Indeed, Plaintiff has already filed a motion for summary judgment based on when the flooring product was manufactured and the effective dates of the policies—an issue that is wholly separate from the issues being litigated in North Carolina. [Dkt. # 29]. Accordingly, the third factor also favors maintaining jurisdiction.

**D.**

The fourth factor asks whether entry of a declaratory judgment would increase friction between federal and state courts or improperly encroach upon state jurisdiction. *Flowers*, 513 F.3d at 559. This factor is usually implicated where the underlying state suit involves the same parties or the same factual issues, or the declaratory judgment action requires consideration of novel or complex issues of state law. *See Wilton*, 515 U.S. at 283 ("[A]t least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the

federal declaratory action to proceed.") (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)); *see also Bituminous Cas.*, 373 F.3d at 814–15 (setting forth three sub factors).

Here, the underlying factual issues before the North Carolina court are only tangentially relevant to the insurance dispute. Even if the North Carolina court ultimately determines that there was no defect in the Protect-All flooring, the parties would still need to determine whether the alleged defect was the type of problem that triggered Plaintiff's duty to defend. There is little danger that this Court will be required to make factual findings that could conflict with the North Carolina court's factual findings. *See Travelers*, 495 F.3d 272. Moreover, if such a danger arises, the Court may reconsider and stay or dismiss the case at that time.

Similarly, although the questions before the Court in this case are questions of state law, they are not particularly novel or complex questions that would be better handled by a state court. Rather, they are questions of contract interpretation that courts, state and federal, encounter on a daily basis. Importantly, its not yet clear which state's laws should be applied in the insurance coverage dispute. If, as Plaintiff suggests, it is determined that the contract should be interpreted under Michigan law, this Court is better suited to answer questions of Michigan law than a state court in North Carolina, simply because of the greater frequency of this Court's contact with Michigan law. Accordingly, although it is a closer question, the fourth factor also suggests that this Court should exercise jurisdiction.

**E.**

The fifth and final factor asks whether there is an alternative remedy which is better or more effective. *Flowers*, 513 F.3d at 561. Here, there are alternative remedies. Plaintiff could have, depending on the laws of North Carolina, moved to intervene in the underlying Cracker Barrel

-13-

litigation. Plaintiff could have filed a declaratory action in state court instead of federal court. Plaintiff could have waited for the Cracker Barrel litigation to be resolved, and then filed a declaratory action or waited for Defendants to seek indemnity. It is not clear, however, that any of those remedies would be better or more effective. *See id.* at 562 (collecting cases and finding that the Sixth Circuit has provided inconsistent answers to questions about which types of remedies—intervention, declaratory actions, or indemnity actions—are better or more effective).

Here, Plaintiff suggests that the policy should be interpreted under Michigan law. As a result, it seems this Court is, again, better suited than the North Carolina court to resolve the coverage dispute. Moreover, Defendants have not identified any reason that waiting for the completion of the North Carolina case would be more effective than litigating the coverage dispute now. Rather, Defendants have merely cited one of the inconsistent cases noted above and argued, incorrectly, that there is a per se preference for an indemnity action compared to a declaratory judgment action. *See Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir. 1986). Accordingly, the fifth factor also favors exercising jurisdiction.

**III.**

Each of the five factors favors exercising jurisdiction over this case. Ultimately, there does not appear to be anything unnecessary or duplicative about this declaratory action when compared to the North Carolina case. The insurance coverage dispute is separate, and turns on separate issues, from the state court action.

Accordingly, it is **ORDERED** that Defendants' motion to dismiss [Dkt. # 14] is **DENIED**.

It is further **ORDERED** that the hearing scheduled for May 26, 2011 was canceled based on the Court's determination that the parties' papers presented the necessary information to resolve the motion. E.D. Mich. L.R. 7.1(f).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 27, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 27, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---